

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
12/11/2020

| | | |
|---|---|---|
| IN RE: | § | |
| AFGO DEVELOPMENT COMPANY, INC., | § | CASE NO: 19-35506 |
| Debtor. | § | |
| | § | CHAPTER 7 |
| | § | |
| RONALD J SOMMERS, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-3003 |
| | § | |
| MITCHELL FITZHENRY, | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Trustee, Ronald Sommers, and Defendant, Mitchell Fitzhenry,[1] disagree over the validity of a purported lien claimed by Mr. Fitzhenry. This "lien" burdens property once owned by the Debtor, AFGO Development Company.[2] The Trustee instituted this adversary proceeding seeking a declaration that Mr. Fitzhenry's lien is invalid, as well as damages under Texas's fraudulent lien statute. This Memorandum Opinion resolves Mr. Fitzhenry's Motion to Dismiss and the parties' cross-motions for summary judgment.

Mr. Fitzhenry's Motion to Dismiss, which asserts that the Trustee lacks standing to bring this adversary proceed, is without merit. This Court has already determined that the Wunderlich Property is property of the estate to which the Trustee is a successor-in-interest. Based on that determination, the Trustee has standing to seek a declaratory judgment regarding the validity of Mr. Fitzhenry's "lien." Likewise, Mr. Fitzhenry's contention that he holds a valid lien on the

---

[1] Mr. Fitzhenry proceeded *pro se* in this adversary proceeding.

[2] This property is located at 14960 Wunderlich Dr., Houston, TX 77069, and is referred to by the parties as the "Wunderlich Property."

Wunderlich Property is incorrect. The circumstances surrounding the origination of Mr. Fitzhenry's "lien" do not give rise to any of the three types of liens recognized by Texas law. Finally, the Trustee failed to adequately support his request for summary judgment on the fraudulent lien claim. That is, the Trustee did not present evidence sufficient to entitle the Trustee to a judgment as a matter of law that Mr. Fitzhenry is liable for filing a fraudulent lien.

Mr. Fitzhenry's Motion to Dismiss is Denied. The Trustee's Motion for Summary Judgment is Granted in part and Denied in part. Mr. Fitzhenry's Motion for Summary Judgment is Denied.

## BACKGROUND

This adversary proceeding centers on a Notice of Lien Mr. Fitzhenry filed in the Harris County Records of Real Property. (ECF No. 1 at 3–4).[3] This Notice of Lien purports to evidence a lien held by Mr. Fitzhenry on two properties—the Louetta Property[4] and the Wunderlich Property. (ECF No. 1-1 at 1). It is the validity of the purported lien on the Wunderlich Property challenged by the Trustee here. This "lien" arose from a lending agreement between Mr. Fitzhenry and the Debtor's president, Travis Hudson. (ECF No. 1 at 4–5).[5]

### The Loan Underlying the Purported Lien

Just over a year before the Debtor sought chapter 11 relief, Mr. Fitzhenry's personal banker asked Mr. Fitzhenry if he would be interested in giving Travis Hudson a $100,000 loan. (ECF No.

---

[3] This adversary proceeding is associated with AFGO Development Company, Inc.'s ("the Debtor") bankruptcy. The Debtor filed for chapter 11 relief on September 30, 2019. (*See* Case No. 19-35506, ECF No. 1).

[4] The "Louetta Property" is located at 0 Louetta Road, Spring, TX 77388. (ECF No. 1-1 at 1). A Texas state court has already declared that the "lien," evidenced by the Notice of Lien, on the Louetta Property is invalid. (ECF No. 17-5 at 2–4).

[5] In addition to serving as the Debtor's president, Travis Hudson is also the president of Texas Mortgage Group, Inc. and the manager of Oakview Farms, LLC. (ECF No. 17-4 at 2). Texas Mortgage Group owned the Louetta and Wunderlich Properties at the time the purported lien arose. (ECF Nos. 17-4 at 2; Case No. 19-35506, ECF Nos. 7 at 5; 28 at 3).

17-8 at 10). This loan was meant to finance closing costs associated with real property developed by Oakview Farms LLC ("Oakview")—the Oakview property. (ECF No. 17-8 at 10). Mr. Fitzhenry advanced $100,000 to Oakview pursuant to a promissory note dated June 15, 2018. (ECF No. 17-8 at 13–15). This loan was personally guaranteed by Mr. Hudson. (ECF No. 17-8 at 16). No deed of trust was executed securing repayment of the loan.

Two months later, Mr. Fitzhenry was again asked to loan Oakview $100,000. (ECF 17-8 at 10). This time, the loan was intended to prevent the Oakview property from going into foreclosure. (ECF No. 17-8 at 10).[6] Mr. Fitzhenry agreed and, in the end, loaned Oakview an additional $103,500. (ECF No. 17-8 at 10). In total, Mr. Fitzhenry loaned Oakview $203,500 (collectively, "the Loan"). (ECF No. 17-8 at 10). The Loan was memorialized by a promissory note ("the Note"), dated August 6, 2018. (ECF No. 17-7 at 9–11). Multiple documents supplemented the Note, but no deed of trust securing repayment of the Note was executed.[7] Like the initial advance, Mr. Hudson personally guaranteed the Loan and pledged that Texas Mortgage would also guarantee the Loan. (ECF No. 17-7 at 14).[8]

The relevant terms of repayment included:

- The principal amount of $203,500 was to be paid back along with any interest, which accrued at a rate of 5%. (ECF No. 17-7 at 7).

- The Note was to come due on September 4, 2018. (ECF No. 17-7 at 7).

- Repayment of the Loan would be funded by: (i) "10% of the equity from the [sale of] the [Oakview] property;" or (ii) "if the Oakview property [did] not sell . . . [then] out of the closing on Louetta, or out of any loan taken on the Oakview property." (ECF No. 17-7 at 10).

---

[6] Apparently, at this time it was also disclosed to Mr. Fitzhenry that his first loan did not finance closing costs associated with the Oakview property but was instead used as a forbearance payment. (ECF No. 17-8 at 10).

[7] The Note does not contain a merger clause. (ECF No. 17-7 at 7–9).

[8] In his affidavit, Mr. Hudson stated that the Loan was not backed by any guarantees. (ECF No. 17-4 at 2). However, this assertion is in direct conflict with Mr. Hudson's own admissions. (*See* ECF Nos. 17-7 at 14; 17-8 at 16).

- Repayment was guaranteed by Travis Hudson, personally, and by Texas Mortgage. (ECF No. 17-7 at 14).

The Loan was never repaid.

In March 2019, Mr. Hudson informed Mr. Fitzhenry that the profits from the sale of any property would have to be used to pay down other debt. (ECF No. 17-7 at 15).[9] Mr. Hudson told Mr. Fitzhenry that the best repayment he could offer was to convert the Loan into an "investment" in Mr. Hudson's development projects. (ECF No. 17-7 at 15). None of the Loan documents expressly grant Mr. Fitzhenry a lien on the Wunderlich Property.

### The "Lien" and the Wunderlich Property

Despite not having explicit written authorization, Mr. Fitzhenry filed a Notice of Lien on the Louetta and Wunderlich properties in Harris County on January 4, 2019. (ECF No. 1-1 at 1). The Notice of Lien was not executed by the owner of the property. Five months later, a Texas state court declared Mr. Fitzhenry's "lien" on the Louetta Property invalid. (ECF No. 17-5 at 2–3). However, it was not until December 2019—almost a year after the Notice of Lien was filed— that Mr. Fitzhenry's "lien" on the Wunderlich property was challenged. (ECF No. 17-2 at 2).

Meanwhile, the Wunderlich Property was itself the subject of another dispute. Shortly after the Debtor filed bankruptcy, Capital Bank[10] sought relief from the stay so it could foreclose on the Wunderlich Property. (Case No. 19-35506, ECF No. 7 at 1–6). Capital alleged that Texas Mortgage transferred the Wunderlich Property to the Debtor about a week before the Debtor filed

---

[9] Notably, the Louetta Property was cross collateralized with the Wunderlich Property, both of which were subject to an IRS tax lien. (ECF No. 17-7 at 15).

[10] Capital Bank purportedly held a first-priority lien on the Wunderlich Property. (Case No. 19-35506, ECF No. 7 at 2).

petition.  (Case No. 19-35506, ECF No. 7 at 5).  This transfer, Capital alleged, was fraudulent. (Case No. 19-35506, ECF No. 7 at 3–4).

The Court entered an interim order granting Capital's relief from stay motion, which authorized Capital to post the Wunderlich Property for sale.  (Case No. 19-35506, ECF No. 10 at 1).  Shortly after entry of the interim order and a hearing, the Court entered another order appointing a chapter 11 trustee and authorizing Capital to take all preparatory steps necessary to sell the Wunderlich Property.  (Case No. 19-35506, ECF No. 38 at 1).  On December 27, 2019, the Court authorized the sale of the Wunderlich Property and ordered that any interest held by Mr. Fitzhenry in the Wunderlich Property would attach to the proceeds of the sale.  (Case No. 19-35506, ECF No. 72 at 3).  In this order, the Court found that the Wunderlich Property was property of the estate under 11 U.S.C. § 541.  (Case No. 19-35506, ECF No. 72 at 2).  A week after entry of the sale order, the Wunderlich sale closed.  (Case No. 19-35506, ECF No. 73 at 1).  The Court never ruled on whether the transfer of the Wunderlich Property to the Debtor was fraudulent.

### The Trustee's Adversary Proceeding

The Trustee instituted this adversary proceeding after the Wunderlich sale closed.  (ECF No. 1 at 2).  The Trustee sought: (i) a declaration that Mr. Fitzhenry's "lien" on the Wunderlich Property was invalid; (ii) if the "lien" was valid, avoidance of the "lien" under 11 U.S.C. § 544(a)(3) because the Notice of Lien did not provide actual or constructive notice to a state-law bona fide purchaser; (iii) damages, as well as costs and attorneys' fees, under Texas's fraudulent lien statute, Tex. Civ. Prac. & Rem. Code Ann. § 12.002 (West 2019); and (4) in the alternative, a surcharge against Mr. Fitzhenry's "lien" under 11 U.S.C. § 506(c).  (ECF No. 1 at 5–7).

Mr. Fitzhenry filed an answer to the Trustee's adversary complaint.  (*See* ECF No.  11). Answering the lien validity claim, Mr. Fitzhenry alleged that he could establish the existence of

an express agreement by which Mr. Hudson intended to grant Mr. Fitzhenry a lien on the Wunderlich Property to secure repayment of the Loan. (ECF No. 11 at 16). Mr. Fitzhenry also alleged that the "lien" could not be avoided under § 544(a)(3) because the Notice of Lien he filed gave the Trustee notice of the lien. (ECF No. 11 at 18). In response to the fraudulent lien claim, Mr. Fitzhenry alleged that his "lien" was not fraudulent because he had a "valid oral contract" authorizing the lien on the Wunderlich Property. (ECF No. 11 at 19). Mr. Fitzhenry also alleged that he did not file the Notice of Lien to gain leverage over Mr. Hudson or the Debtor, instead Mr. Fitzhenry sought financial protection. (ECF No. 11 at 19).[11]

Shortly after answering the Trustee's complaint, Mr. Fitzhenry moved to dismiss the complaint. (*See* ECF No. 13). Essentially, Mr. Fitzhenry's motion asserted that the Trustee lacked statutory standing to bring this action because the Debtor never acquired title to Wunderlich. (ECF Nos. 13 at 5; April 27, 2020 Hearing at 1:30:00–1:42:50). According to Mr. Fitzhenry, title was never acquired because the transfer of Wunderlich to the Debtor was fraudulent. (ECF No. 13 at 5). The Court took Mr. Fitzhenry's Motion to Dismiss under advisement. (April 27, 2020, Courtroom Minutes).[12]

The parties filed cross-motions for summary judgment. The Trustee moved for summary judgment on his lien validity and fraudulent lien claims. (ECF No. 17 at 7–12). In support of his motion on the lien validity claim, the Trustee asserted: (i) that Mr. Fitzhenry was not provided a written agreement or instrument granting a security interest in the Wunderlich Property, thereby

---

[11] Mr. Fitzhenry's response to the Trustee's surcharge claim is not relevant to the disposition of the parties' cross-motions for summary judgment.

[12] The Trustee filed a response to Mr. Fitzhenry's Motion to Dismiss. (*See* ECF No. 22). In his response, the Trustee argued that the *in pari delicto* defense was inapplicable to this action. (ECF No. 22 at 3–4). The Trustee made this argument in response to Mr. Fitzhenry's Motion to Dismiss because Mr. Fitzhenry argued that the defense barred the Trustee's claims. (*See* ECF No. 13; *see also* ECF No. 15 at 7:10–8:3). Mr. Fitzhenry abandoned this defense and clarified his intent was, instead, to argue that the Trustee lacked standing under § 544. (April 27, 2020 Hearing at 1:30:00–1:42:50).

preventing Mr. Fitzhenry from holding a valid lien on Wunderlich; (ii) that there was no basis to grant Mr. Fitzhenry an equitable lien on Wunderlich; and (iii) that the guarantees made by Mr. Hudson and Texas Mortgage did not implicitly grant Mr. Fitzhenry a lien on the Wunderlich Property.  (ECF No. 17 at 7–10).  The Trustee supported its fraudulent lien claim by arguing that the Notice of Lien filed by Mr. Fitzhenry established that Mr. Fitzhenry possessed the requisite knowledge and intent to be held liable under Texas's fraudulent lien statute.  (ECF No. 17 at 10–11).

Mr. Fitzhenry's Motion for Summary Judgment reiterated the arguments made in support of his Motion to Dismiss—that the Trustee lacked standing under § 544 because the Debtor never acquired title to the Wunderlich Property.  (*See generally* ECF No. 24).  Mr. Fitzhenry did not attach any evidence supporting his summary judgment motion.

After the parties filed their cross-motions for summary judgment, the Court held a hearing on the cross-motions, as well as Mr. Fitzhenry's Motion to Dismiss.  (*See* Courtroom Minutes, April 27, 2020).  At the hearing, the Court was provided two responses prepared by Mr. Fitzhenry.  (April 27, 2020 Hearing at 2:11:00–2:25:00).[13]  Attached to Mr. Fitzhenry's response to the Trustee's Motion for Summary Judgment was an unsworn declaration of Valerie Davis. (*See* ECF

---

[13] These were Mr. Fitzhenry's response to the Trustee's response to Mr. Fitzhenry's Motion to Dismiss and Mr. Fitzhenry's response to the Trustee's Motion for Summary Judgment.  (April 27, 2020 Hearing at 2:12:30).  Mr. Fitzhenry's responses were provided to the Court in an exhibit binder the Trustee prepared for the April 27 hearing. (*See* April 27, 2020 Hearing at 2:11:00).  These responses reiterated the positions taken by Mr. Fitzhenry in his Motion to Dismiss and summary judgment motion.  Mr. Fitzhenry attached exhibits to support both responses.  (*See* April 27, 2020 Hearing at 2:11:00).  At the hearing, the Court noted it would review the documents contained in the Trustee's exhibit binder.  (April 27, 2020 Hearing 2:20:30).  However, these documents were not filed in accordance with the Local Rules and General Order 2020-4.  Consequently, the Court issued an Order directing the parties to properly file the documents.  (ECF No. 26 at 1).  The Trustee complied, filing the contents of the exhibit binder.  (*See generally* ECF No. 28).  Mr. Fitzhenry did not file his responses.  Yet, consistent with the Court's representation that it would consider the documents contained in the Trustee's exhibit binder, the Court considers the relevant portions of Mr. Fitzhenry's responses here.  Specifically, Ms. Davis's unsworn declaration.  (ECF No. 28-21 at 2).

No. 28-21 at 2).[14]  In her unsworn declaration, Ms. Davis asserted that she overheard a conservation

between Mr. Hudson and Mr. Fitzhenry, during which Mr. Hudson orally granted Mr. Fitzhenry a

lien on the Wunderlich Property.  (ECF No. 28-21 at 2).  Mr. Fitzhenry corroborates Ms. Davis's

allegation.  (ECF Nos. 12-1; 15 at 4:17–5:12).  Aside from Mr. Fitzhenry's own allegations, Ms.

Davis's unsworn declaration is the only evidence suggesting Mr. Hudson granted Mr. Fitzhenry a

lien on the Wunderlich Property.

After the hearing on the parties' motions, the Court took the matters under advisement.

## JURISDICTION

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.  This

is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).  Pursuant to 28 U.S.C.

§ 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a).  Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 in adversary

proceedings.  A party seeking summary judgment must demonstrate the absence of a genuine

dispute of material fact by establishing an absence of evidence supporting an essential element of

the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).

A genuine dispute of material fact is one that could affect the outcome of the action or allow a

reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex.,*

---

[14] Valerie Davis is Mr. Fitzhenry's partner and acted as a real estate agent for Mr. Hudson and his entities. (ECF No. 17 at 5).

*L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in a light most favorable to the non-movant. *Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014). Nevertheless, a court is not obligated to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc*., 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional [*sic*] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co*., 805 F.3d 535, 538 (5th Cir. 2015).

A party asserting that a fact cannot be or is not genuinely disputed must support its assertion by citing to particular parts of the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court must consider cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Aubrey v. Sch. Bd. of Lafayette Par.*, 92 F.3d 316, 318 (5th Cir. 1996). A credibility determination cannot be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party can object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence at trial. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enter., Inc.*,

783 F.3d 527, 536 (5th Cir. 2015).  The evidentiary support needed to meet the initial summary

judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

      If the movant bears the burden of proof on an issue, a successful motion must present

evidence entitling the movant to judgment at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  Upon an adequate showing, the burden shifts to the non-moving party to establish a

genuine dispute of material fact.  FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The non-

moving party must cite to specific evidence demonstrating the existence of a genuine dispute.  FED.

R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the

manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362,

371 (5th Cir. 2010).  Even if the movant meets its initial burden, the motion should be granted only

if the non-movant cannot show a genuine dispute of material fact.

## ANALYSIS

      The validity of Mr. Fitzhenry's "lien" is at the heart of this adversary proceeding.  Driving

Mr. Fitzhenry's defense is his contention that the Trustee lacks the necessary statutory standing to

challenge Mr. Fitzhenry's "lien."  However, if the Trustee does have standing, Mr. Fitzhenry

argues that he holds a valid lien on the Wunderlich Property, which was verbally authorized by

Mr. Hudson.  The Trustee contends that no such authorization occurred, and that if it did occur, an

oral authorization cannot create a real property lien.  Based on those allegations, the Trustee alleges

that Mr. Fitzhenry's Notice of Lien is fraudulent within the meaning of Texas's fraudulent lien

statute.

      The Trustee had standing to institute this action because the Wunderlich Property was

property of the estate, as are the proceeds from its sale.  Despite the filing of a Notice of Lien, Mr.

Fitzhenry does not hold a valid lien on the Wunderlich Property.  However, the evidence presented

on summary judgment does not entitle the Trustee to a judgment as a matter of law holding Mr. Fitzhenry liable for filing a fraudulent lien.

### *The Trustee's Statutory Standing*

The Trustee's complaint states a claim upon which relief can be granted because it plausibly establishes the Trustee's standing to bring this action. Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b) is incorporated in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012. A party's *statutory* standing may be challenged under Rule 12(b)(6). *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("[A] dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)."). To avoid 12(b)(6) dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint's contents will be construed in favor of the plaintiff and all "well-pleaded facts" will be taken as true. *United States v. Butt*, 930 F.3d 410, 413 (5th Cir. 2019), cert. denied sub nom. *Salahuddin v. United States*, 140 S. Ct. 2655, 206 L. Ed. 2d 721 (2020) (quoting *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016)).

Statutory standing is conferred on a party by a statute providing the party with "the cause of action [it] asserts." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017). A bankruptcy trustee in imbued with the capacity to sue and be sued on behalf of the estate. 11 U.S.C. § 323 (2018). The estate is comprised of all legal and equitable interests held by the debtor in property. § 541(a).[15] Section 544 expressly granted the Trustee the right to avoid "any transfer of property of the debtor or any obligation incurred by the debtor . . . ." 11 U.S.C. § 544(a). The

---

[15] The estate also includes proceeds from the sale of other property of the estate. 11 U.S.C. § 541(a)(6).

Trustee's complaint plausibly alleges that the Wunderlich Property, and the proceeds from its sale, were property of the estate and that Mr. Fitzhenry's purported lien is an obligation binding the Debtor. Taking these allegations as true, §§ 323, 541, and 544 statutorily authorized the Trustee to seek the relief requested in the complaint.

Nevertheless, Mr. Fitzhenry contends there is a factual dispute over the interest the Debtor held in the Wunderlich Property. Mr. Fitzhenry alleges the Debtor did not hold a legal or equitable interest in the Wunderlich Property because its transfer was fraudulent. Generally, if resolution of a motion to dismiss turns on a factual dispute, it is more appropriately resolved on summary judgment or at trial. *See, e.g., McLin v. Ard*, 866 F.3d 682, 690 n.2 (5th Cir. 2017) (noting that factual disputes regarding qualified immunity are more appropriately resolved on summary judgment, not by a 12(b)(6) motion to dismiss); *Kitt v. Bailey*, No. CIV.A. H-14-0368, 2015 WL 1729882, at *7 (S.D. Tex. Apr. 10, 2015) (denying a motion to dismiss because it presented disputes of fact that could not be resolved at the pleading stage). Here, however, Mr. Fitzhenry's motion can be resolved on the pleadings. Mr. Fitzhenry's claim that a factual dispute exists over the Debtor's interest in the Wunderlich Property is without merit. This Court already determined that the Wunderlich Property was property of the estate under 11 U.S.C. § 541(a). Thus, the Trustee's standing cannot be genuinely disputed. *See In re Moye*, 437 Fed. Appx. 338, 341–42 (5th Cir. 2011) (quoting *In re England*, 153 F.3d 232, 235 (5th Cir. 1998)) (holding that the "law-of-the-case doctrine" binds courts to their prior final decisions in a pending case); *see also Letcher v. Letcher*, 421 S.W.2d 162, 169 (Tex. Civ. App.—San Antonio 1967, writ dism'd) ("[A] transfer designed to defraud creditors passes title to the property, and the grantor may thereafter assert no right, title or interest in the property . . . for courts leave parties to a fraudulent transaction in the position they have placed themselves."); *John Hancock Mut. Life Ins. Co. v. Morse*, 124 S.W.2d

330, 333 (Tex. Comm'n App. 1939) ("A creditor's judgment subjecting property fraudulently conveyed by his debtor to the payment of his debt does not have the effect of reinvesting title in the fraudulent vendor.").  Of course, the situation may differ when a bankruptcy trustee seeks avoidance.  *See* 11 U.S.C. § 550(a).

Mr. Fitzhenry's Motion to Dismiss is Denied.

### *Validity of the Lien on the Wunderlich Property*

The parties' dispute primarily centers on the validity Mr. Fitzhenry's purported lien.  The Trustee contends that Mr. Fitzhenry's purported lien never attached to the Wunderlich Property, thereby making it invalid.  Mr. Fitzhenry argues that his lien did attach because it is an equitable lien supported by an agreement between the Debtor's predecessor-in-interest and Mr. Fitzhenry. The circumstances surrounding the purported lien do not entitle Mr. Fitzhenry to an equitable lien.

Mr. Fitzhenry's purported lien arises under Texas law.   In Texas, there must be an "underlying debt securing [a] lien" for the lien to encumber collateral.  *Satsky v. United States*, 993 F. Supp. 1027, 1029 (S.D. Tex. 1998) (citing *United States v. Phillips*, 267 F.2d 374, 377 (5th Cir.1959)) (applying Texas law).[16]  Yet the existence of an underlying debt alone is insufficient to give rise to a lien.  *See Nelson v. Nelson*, 193 S.W.3d 624, 628 (Tex. App.—Eastland 2006, no pet.) (examining the requirements for a valid lean under the Texas Business & Commerce Code); *Matter of Daves*, 770 F.2d 1363, 1367 (5th Cir. 1985) (holding that an express or implied agreement granting a lien on *specific* property is required for an equitable lien to arise).  Rather, a lien must be supported by a creditor's right to proceed against certain property as recourse for nonpayment of a debt.  *Nelson*, 193 S.W.3d at 628; *accord* Tex. Bus. & Com. Code Ann.

---

[16] Texas law recognizes that mortgages are simply liens on real property.  *Humble Oil & Ref. Co. v. Atwood*, 244 S.W.2d 637, 640 (Tex. 1951).  Deeds of trust are simply mortgages that provide the creditor the power to sell on default.  *Starcrest Tr. v. Berry*, 926 S.W.2d 343, 351 (Tex. App.—Austin 1996, no writ).

§ 9.203(b) (West 2019).  Such a right can be conferred by statute or by agreement.  *See, e.g.*, Tex. Prop. Code Ann. §§ 52.001, 53.051, 54.001, 55.002 (West 2019) (statutory provisions for acquiring judgment liens, mechanics' liens, and hospital liens); *see also Chorman v. McCormick*, 172 S.W.3d 22, 24 (Tex. App.—Amarillo 2005, no pet.) ("The fundamental element necessary to create an equitable lien is the existence of an express or implied contract."); *Richards v. Suckle*, 871 S.W.2d 239, 241 (Tex. App.—Houston [14th Dist.] 1994, no writ) (same).[17]  Absent statutory authorization or an express or implied agreement between the parties, a creditor cannot seek pre-judgment recourse for an unpaid debt against a debtor's property.

Mr. Fitzhenry offered no evidence, nor has he made any claim, that he holds a statutory lien on the Wunderlich Property.  Hence, the validity of Mr. Fitzhenry's "lien" hinges on whether it arose from an agreement between Mr. Fitzhenry and the Debtor.

A.    <u>Equitable Lien</u>

In Texas, an agreement granting a security interest in specific real property is generally evidenced by a written mortgage or deed of trust.  *See Norriss v. Patterson*, 261 S.W.2d 758, 761 (Tex. Civ. App.—Fort Worth 1953, writ ref'd n.r.e.) ("A mortgage . . . is an executed contract pledging the title as a security for performance of an obligation by a legal or equitable owner."); *see also Starcrest*, 926 S.W.2d at 351 (holding that a deed of trust is a mortgage with the power to sell after default).  However, in the absence of a written mortgage or deed of trust, a creditor may hold an equitable lien on real property.  *Martin v. Ford*, 853 S.W.2d 680, 683 (Tex. App.—Texarkana 1993, writ. denied).  Equitable liens arise when parties to a transaction "intend [for] certain property to secure the payment of a debt."  *Chorman*, 172 S.W.3d at 24 (citing *Bray v.*

---

[17] The Texas Constitution also provides for certain "self-executing" liens.  Tex. Const. art. XVI, § 37; *Strang v. Pray*, 35 S.W. 1054, 1056 (1896) ("[T]he lien attached under the constitution of the state, and was not lost by a failure to record . . . .").

*Curtis*, 544 S.W.2d 816, 819 (Tex. Civ. App.—Corpus Christi 1976, writ ref'd n.r.e.)).[18]   The existence of an equitable lien depends on whether the parties expressly or implicitly agreed that a debt would be secured by specific property.   *Id.*   The circumstances surrounding the parties' transaction dictate whether such an agreement was formed.   *Id.*   However, if the party seeking the lien had an adequate remedy at law and failed to pursue that remedy, an equitable lien will not be imposed.   *Hoarel Sign Co. v. Dominion Equity Corp.*, 910 S.W.2d 140, 143 (Tex. App.—Amarillo 1995, writ denied).

Mr. Fitzhenry bore the burden of establishing that he held an equitable lien on the Wunderlich Property.   *See In re Cafeteria Operators, L.P.*, 299 B.R. 400, 406 (Bankr. N.D. Tex. 2003) ("Under the Bankruptcy Code, the secured lender has the burden of proof on the issue of validity, priority and/or extent of its lien on the property."); *U.S. Bank Nat. Ass'n v. Safeguard Ins. Co.*, 422 F. Supp. 2d 698, 705–07 (N.D. Tex. 2006) (examining Texas law and concluding that the mortgagee bears the burden of establishing the existence of an equitable lien on insurance proceeds); *see also In re Henderson,* 395 B.R. 893, 898 (Bankr. D.S.C. 2008) (in moving for relief from the automatic stay, "[the creditor] bears the burden of proof on the validity of its lien . . . .").[19] The Trustee's request for summary judgment on the lien validity issue is, essentially, a "no-evidence" motion for summary judgment.   In support of its motion, the Trustee asserted that Mr. Fitzhenry would be unable to produce evidence demonstrating a genuine issue of material fact

---

[18] In *In re RONFIN Series C Bonds Sec. Interest Litig.*, the Fifth Circuit set out the requirements for the imposition of an equitable lien. 182 F.3d 366, 371 (5th Cir. 1999).  To establish an equitable lien, a party must show: (1) that an express or implied agreement demonstrates the parties' intent to create a lien; (2) that the parties contemplated that specific property would secure the loan; and (3) that no alternative adequate legal remedy exists. *Id.*  In setting out these elements, the *RONFIN* court did not cite Texas authority.  However, one of the properties at issue, upon which the creditor sought to impose an equitable lien, was situated in Texas.  *Id.* at 369.

[19] Texas law aligns with the proposition that a purported lien holder bears the burden of establishing the lien's validity.  *See, e.g., Roberson v. Home Owners' Loan Corp.*, 147 S.W.2d 949, 953 (Tex. Civ. App.—Dallas 1941, writ dism'd judgm't cor.); *Hernandez v. Johnson*, 09-17-00411-CV, 2019 WL 3022544, at *4 (Tex. App.—Beaumont July 11, 2019, no pet.); *Radcliff Fin. Corp. v. City Motor Sales, Inc.*, 23 S.W.2d 591, 595 (Tex. 1959).

regarding the existence of an equitable lien on the Wunderlich Property. *See Sossamon*, 560 F.3d at 326.

An agreement is fundamental to the existence of an equitable lien. *Chorman*, 172 S.W.3d at 24. Mr. Fitzhenry needed to adduce some evidence giving rise to a factual dispute over existence of the necessary agreement. FED. R. CIV. P. 56(c)(1). The record reveals that Mr. Fitzhenry did enter a lending agreement with Oakview—the Note. This lending agreement was backed by the guarantees of Mr. Hudson and Texas Mortgage, the owner of the Wunderlich Property at the time the Note was executed. It is doubtless that Mr. Fitzhenry and Oakview had an agreement. It is doubtful, however, that this agreement can serve as a predicate for an equitable lien, despite an intricate link between Oakview and the Debtor.

The agreement between Mr. Fitzhenry and Oakview is memorialized by the Note. The Note supplies the basic terms of the lending arrangement but does not allude to any collateral securing repayment of the Note. Nor does the Note specify the provenance of the funds to be used for repayment. None of the other documents supplementing the Note pledge a security interest in the Wunderlich Property to Mr. Fitzhenry.[20] In fact, Mr. Fitzhenry concedes that he does not have a written agreement authorizing a lien on the Wunderlich Property. (ECF No. 15 at 4:17–23).

Without an express written security agreement, the fate of Mr. Fitzhenry's "lien" rests on the existence of an oral agreement between Mr. Hudson and Mr. Fitzhenry.[21]

---

[20] This Court need not pass on the effect of Mr. Hudson's pledge that proceeds from the sale of the Louetta or Oakview properties would be used to pay back the Loan.

[21] There is no evidence suggesting that Oakview held an interest in the Wunderlich Property, which would enable it to grant a lien on the property. *See In re McConnell*, 122 B.R. 41, 45–46 (Bankr. S.D. Tex. 1989) (finding a security interest could not be granted in property by one who did not hold title to the property); *see also* Tex. Bus. & Com. Code Ann. § 9.203 (West 2019) (requiring a debtor to have rights in collateral to grant a security interest under the Texas commercial code). However, in an August 6, 2018 email, Travis Hudson, personally and through Texas Mortgage, guaranteed repayment of the Note. (ECF No. 17-7 at 14). Mr. Fitzhenry offers no argument or authority supporting a proposition that Texas Mortgage's guaranty could create a lien on the Wunderlich Property. Nor was any argument or authority offered to support a proposition that the cross-collateralization of the Wunderlich and

1.      *Equitable Lien by Oral Agreement*

Generally, Texas does not recognize orally granted real property liens.  *West v. First Baptist Church of Taft*, 71 S.W.2d 1090, 1100 (Tex. 1934) (citing *Allen v. Allen*, 107 S.W. 528, 530 (Tex. 1908)); *see also Woods v. West*, 37 S.W.2d 129, 132 (Tex. Comm'n App. 1931) (quoting *Floyd v. Hammond*, 268 S.W. 146, 147 (Tex. Comm'n App. 1925)) ("An equitable mortgage lien upon real estate may not be created by parol . . . .").  There is a narrow exception to Texas's broad refusal to recognize such oral agreements.  This exception arises when a debtor induces a creditor to make a loan with an agreement that the debtor will eventually execute a mortgage or other document granting a lien on real property purchased with the loan.  *See Woods*, 37 S.W.2d at 132 ("[W]here one furnishes money to another with which to purchase land, under an agreement that the purchaser will execute a mortgage or give a lien upon the property in the future to secure the money advanced, the agreement will be enforced in equity as a mortgage . . . ." (quoting *Floyd*, 268 S.W. at 147)); *Martin*, 853 S.W.2d at 683 (imposing an equitable lien where a promissory note was executed memorializing the parties' expectation that a subsequent mortgage would be executed).  This exception prevents fraud on lenders.  *Woods*, 37 S.W.2d at 132.  Yet a lender's failure to pursue alternative legal remedies precludes the finding of fraud necessary to impose an equitable lien.  *See Pipkin v. Bank of Miami*, 179 S.W. 914, 916–18 (Tex. Civ. App.—Amarillo 1915, no writ) (explaining that equity may demand the enforcement of oral agreements concerning real property to prevent fraud on lenders);[22] *accord Floyd*, 268 S.W. at 147.

---

Louetta Properties authorized Mr. Fitzhenry's "lien."  (ECF No. 15 at 4:24–5:3).  Thus, the various writings exchanged by the parties do not evidence the grant of a security interest in the Wunderlich Property.

[22] The *Pipkin* court reasoned that a creditor's advance of funds based on a debtor's representation that a lien would be granted is, essentially, "part performance" of the agreement, thereby taking the agreement out of the statute of frauds.  179 S.W. at 916–18.

Mr. Fitzhenry offers two pieces of evidence in support of his claim that Mr. Hudson verbally granted a lien on the Wunderlich Property.  The first is his own assertion that such an agreement was reached.  (ECF Nos. 12-1 at 1; 15 at 4:17–5:12).  The second is the unsworn declaration of Ms. Davis, which alleges that, during a phone call, Mr. Hudson authorized Mr. Fitzhenry to file a lien on the Wunderlich Property "at [his] convenience."  (ECF No. 28-21 at 2). Mr. Hudson refutes the existence of this oral agreement in his affidavit, which asserts the Note "is not secured by any property or personal guarantees."  (ECF No. 17-4 at 2).  This "he said, she said" dispute does not need to be, nor can it be, resolved on summary judgment.  *See LHC Grp., Inc.*, 773 F.3d at 694 (prohibiting courts from resolving credibility determinations on summary judgment).  Even if Mr. Fitzhenry's contention is taken as true, this oral agreement does not fall within the narrow exception requiring the equitable enforcement of such agreements.  *See Plumhoff*, 572 U.S. at 768 (holding that, on summary judgment, facts will be viewed in a light most favorable to the non-movant).

### 2.   *Purchase-Money Loan*

Mr. Fitzhenry's loan to Oakview was not a purchase-money loan.  The Texas exception to the writing requirement is predicated on an advance of purchase money.  *See Martin*, 853 S.W.2d at 683 ("[W]here one furnishes money to another with which to *purchase land* . . . the agreement will be enforced in equity . . . ." (emphasis added)).  This predicate is necessary to the existence of an equitable mortgage even where the creditor and debtor do not have an express agreement that a lien will secure a purchase-money loan.  *See Manz v. Johnson*, 531 S.W.2d 934 at 935–36 (acknowledging the existence of an equitable lien on real property securing purchase money advanced by the seller-creditor, though there was no formal agreement regarding the future execution of a mortgage); *see also Campbell v. Pundt*, 121 S.W.2d 387, 387–88 (Tex. Civ. App.—

Waco 1938, no writ) (imposing an equitable lien on real property in favor of an unknowing third-party who held an interest in funds used to purchase the real property).  Had Mr. Fitzhenry advanced funds to Oakview to purchase the Wunderlich Property, Mr. Fitzhenry may have held an equitable lien on Wunderlich.

However, the record forecloses such a finding.  The Note memorializing the Loan does not describe the purpose for which the Loan was sought.  (*See* ECF No. 17-7 at 7–9).  No evidence offered by either party on summary judgment supports that the Loan was advanced as purchase money for the Wunderlich Property.  Mr. Fitzhenry's own affidavit confirms that the Loan was intended to delay foreclosure on the Oakview property.  (ECF No. 17-8 at 10).  While there may have been an oral agreement between Mr. Hudson and Mr. Fitzhenry authorizing a lien on the Wunderlich Property, there is no evidence to suggest the Wunderlich Property was purchased with the Loan.  This lack of evidence militates against the imposition of an equitable lien.

### 3. Adequate Legal Remedy

Mr. Fitzhenry had alternative legal remedies through which he could have sought repayment of the Loan.  These alternative remedies preclude Mr. Fitzhenry from establishing the validity of his "lien" on Wunderlich Property even under the broadest construction of the purchase-money exception.

In *Pipkin v. Bank of Miami*, the Amarillo Court of Civil Appeals seemingly dispensed with the requirement that an equitable lien must be predicated an advance of purchase-money.  *See generally* 179 S.W. at 916–18.  While *Pipkin* dealt with what was essentially an advance of purchase money, its holding extends beyond purchase-money transactions.  *Id.* at 914.  In *Pipkin*, the court predicated its imposition of an equitable mortgage, which was based on an oral contract, *on a finding of fraud* against the creditor.  *Id.* at 918.  Fraud, as used by the court in *Pipkin*, meant

that the debtor's actions, absent the imposition of an equitable lien, would leave the creditor without a "remedy to recover his money." *Id.* at 916 (quoting *Johnson v. Portwood*, 34 S.W. 596, 600 (Tex. 1896). In other words, when a debtor's actions deprive a creditor of the ability to recover funds loaned, the creditor suffers an "injury [that] constitutes fraud and creates equity." *Id.* at 917. This equity requires the imposition of an equitable lien to secure the creditor's loan. *Id.* at 917–18. The thrust of *Pipkin* is that the imposition of an equitable lien on real property depends not on the purpose of the loan, but instead on the existence of an alternative remedy by which the creditor may recover the loan. Consistent with other cases articulating the elements required to create an equitable, a creditor's lack of an alternative remedy is essential to the imposition of an equitable lien. *Id.* at 916–18; *accord Hoarel Sign*, 910 S.W.2d at 143; *RONFIN*, 182 F.3d at 371.[23]

Mr. Fitzhenry, however, had alternative legal remedies. First, Mr. Fitzhenry could have sued Oakview on the Note to recover the Loan. *See Trueheart v. Braselton*, 875 S.W.2d 412, 415 (Tex. App.—Corpus Christi 1994, no writ) (citing *Whittenburg v. Cessna Finance Corp.,* 536 S.W.2d 444, 445 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.)) (explaining that the holder of a note is entitled to enforce the note against its maker if the note is in default). Second, because both Mr. Hudson and Texas Mortgage guaranteed the Note, Mr. Fitzhenry could have sued both guarantors in an attempt to recover the Loan. *See Byrd v. Estate of Nelms*, 154 S.W.3d 149, 157 (Tex. App.—Waco 2004, pet. denied) (citing *Garner v. Corpus Christi Nat. Bank,* 944 S.W.2d 469, 475 (Tex. App.—Corpus Christi 1997, writ denied)) ("A guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another, and a creditor may call upon the guarantor to perform once the primary obligor has failed to perform."). Finally, to ensure his interests were protected, Mr. Fitzhenry could have sought a deed of trust or written

---

[23] Whether "fraud" alone, as recognized in *Pipkin*, can give rise to an equitable lien on real property is questionable. *See* P. A. K., *Mortgages-Oral Agreement to Execute*, 8 Tex. L. Rev. 311, 311–13 (1930).

security agreement from Mr. Hudson and Oakview.  Mr. Fitzhenry sought neither.  *See McConnell*, 122 B.R. at 45–46 (citing *Barfield v. Henderson*, 471 S.W.2d 633 (Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.)) (noting that a lack of "due diligence" by a lender precludes the imposition of an equitable lien).  These remedies are, or could have been, supported by writings and pursued against entities not in bankruptcy.  *See Johnson*, 34 S.W. at 598 (finding fraud on a creditor where the debtor was insolvent, leaving the creditor without adequate means to recover a loan).  The existence of these other remedies precludes the imposition of an equitable lien in favor of Mr. Fitzhenry.  *McConnell*, 122 B.R. at 45–46.

Mr. Fitzhenry is not entitled to an equitable lien, unsupported by written record, on the Wunderlich Property, nor on the proceeds from its sale.

B.    Avoidance of the "Lien"

There is no lien for the Trustee to avoid under 11 U.S.C. § 544.  Mr. Fitzhenry does not hold a statutory or constitutional lien on the Wunderlich Property.  The sole basis Mr. Fitzhenry offered for his "lien" was an alleged oral agreement authorizing the "lien."  Because the only agreement to which Mr. Fitzhenry could point was an oral agreement, under Texas law the Wunderlich property could have only been burdened by an equitable lien.  However, the circumstances surrounding the origination of the Loan foreclose the existence of an equitable lien on the Wunderlich Property.  Therefore, despite filing a Notice of Lien, Mr. Fitzhenry does not hold a legitimate lien on the Wunderlich Property under Texas law.  *See C. Lugrand Dawkins Enterprises, LLC v. Wanderstay Hotel*, LLC, 01-18-00909-CV, 2020 WL 573261, at *3 (Tex. App.—Houston [1st Dist.] Feb. 6, 2020, no pet.) (citing Tex. Gov't Code Ann. § 51.901(c)(2) (West 2019)) (examining whether a lien affidavit created a valid statutory lien).

Section 544(a)(3) empowers the Trustee to avoid any transfers made or obligations incurred by the Debtor that a bona fide purchaser would be able to avoid.  11 U.S.C. § 544(a)(3). Yet the Debtor transferred nothing nor incurred any obligation to Mr. Fitzhenry.  That fact is undisturbed by the Notice of Lien filed by Mr. Fitzhenry.  The Trustee need not invoke his § 544 powers.

Even if the filing of the Notice of Lien required the Trustee to invoke § 544, the fate of Mr. Fitzhenry's "lien" would be unchanged.  Texas law protects bona fide purchasers from improperly filed liens.  *See In re Anloc, LLC*, 487 B.R. 825, 834–36 (Bankr. S.D. Tex. 2013), aff'd sub nom. *In re Anloc, L.L.C.*, 574 Fed. Appx. 401 (5th Cir. 2014) (finding that a recorded document, which did not conform to Texas's recording requirements, could not provide a bona fide purchaser with constructive or inquiry notice); *McEvoy v. Ron Watkins, Inc.*, 105 B.R. 362, 365 (N.D. Tex. 1987) (determining that, under Texas law, an improperly filed lien affidavit does not provide a bona fide purchaser with constructive notice).  Mr. Fitzhenry's Notice of Lien was not properly filed because it did not evidence a valid lien.  Consequently, § 544(a)(3) would empower the Trustee to avoid Mr. Fitzhenry's "lien."  11 U.S.C. § 544(a)(3).

The invalidity of Mr. Fitzhenry's "lien" is not genuinely in dispute.  The Trustee's Motion for Summary Judgment on the lien validity claim is Granted.

### *Fraudulent Lien Filing*

The Trustee alleges that Mr. Fitzhenry is liable for filing a fraudulent lien against the Wunderlich Property.  Mr. Fitzhenry responds by arguing that his lien was valid, thereby making it impossible for him to have filed a fraudulent lien.  While Mr. Fitzhenry does not hold a valid

lien, the evidence offered by the Trustee does not entitle the Trustee to a judgment imposing liability on Mr. Fitzhenry for filing a fraudulent lien.

Section 12.002 of the Texas Civil Practice & Remedies Code imposes liability on anyone who (i) files a document known to be fraudulent lien against real property, (ii) with the intent that the documents be given legal effect, and (iii) with the intent to cause another person physical, mental, or pecuniary harm. *Walker & Associates Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 848 (Tex. App.—Texarkana 2010, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) (Vernon Supp. 2009)). Establishing liability under section 12.002(a) entitles a plaintiff to statutory or actual damages, as well as reasonable costs and attorneys' fees. Tex. Civ. Prac. & Rem. Code Ann. § 12.002(b) (West 2019). The Trustee bore the burden of establishing that there was no genuine dispute of material fact as to any essential element of the Trustee's fraudulent lien claim. *James v. Calkins*, 446 S.W.3d 135, 149 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Aland v. Martin,* 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.); *see also Celotex Corp.*, 477 U.S. at 322–23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Specifically, the Trustee had to present evidence, which would not allow a reasonable fact finder to find for Mr. Fitzhenry. *Gorman*, 753 F.3d at 170. It was not until the Trustee met his initial burden that the burden would shift to Mr. Fitzhenry to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.

A.    Knowledge the "Lien" was Fraudulent

To prevail on his motion, the Trustee had to demonstrate that there existed no genuine dispute that Mr. Fitzhenry possessed the requisite knowledge to be held liable for filing a

fraudulent lien.   At minimum, the knowledge element of section 12.002(a) requires that the document filed purport to evidence a lien "that does not actually exist."  *L'Amoreaux v. Wells Fargo Bank, N.A.*, 755 F.3d 748, 751 (5th Cir. 2014).   Conclusory allegations that the filer knew the document filed evidenced a non-existent lien are insufficient to establish the knowledge element.  *Id.*  This element is subjective.  *See, e.g., Salomon v. Lesay*, 369 S.W.3d 540, 550 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that a lien filer did not possess the requisite knowledge for liability because the filer was not aware that a lien could not attach to homestead property).   Subjective knowledge that the document filed is *fraudulent*, not merely *incorrect*, is required to impose liability on a filer.  *James v. Calkins*, 446 S.W.3d 135, 150 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also Walker & Associates Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 849 (Tex. App.—Texarkana 2010, no pet.) (holding that "fraudulent," within the meaning of the statute, does not mean that the lien is incorrect, but instead that it misrepresents the truth so as to induce detrimental reliance).   The filer must possess this knowledge at the time of filing.  *Aland*, 271 S.W.3d at 431.

The Trustee did not offer evidence foreclosing a genuine dispute of material fact over Mr. Fitzhenry's "knowledge" within the meaning of section 12.002(a).  In support of his motion, the Trustee offered the Notice of Lien filed by Mr. Fitzhenry and an assertion that the "first two elements are easily and simply satisfied."  (ECF Nos. 17 at 10; 17-1).  Neither demonstrates that Mr. Fitzhenry knew the Notice of Lien was incorrect, much less that Mr. Fitzhenry knew it was fraudulent.

First, the Notice of Lien supports the Trustee's motion insofar as it proves that Mr. Fitzhenry filed a document in the county records.  What it does not prove is that Mr. Fitzhenry had subjective knowledge that the Notice of Lien was fraudulent.  Moreover, the Notice of Lien was

filed more than nine months before the Debtor sought chapter 11 relief and almost a year before the Trustee demanded the "lien" be released.  (*See* ECF Nos. 17-1 at 2; 17-2 at 2–3).  The expanse of time between the filing of the "lien" and the Trustee's attempt to sell the property militates against finding that Mr. Fitzhenry knowingly attempted to use the Notice of Lien to defraud or gain leverage over the Debtor, the Trustee, or any third-party purchaser.  Rather, as his summary judgment evidence suggests, Mr. Fitzhenry was acting to protect his pecuniary interest by filing a Notice of Lien, which he believed to have been authorized by Mr. Hudson.  (ECF No. 28-21 at 2).  Second, the conclusory allegation that Mr. Fitzhenry's knowledge is easily demonstrated by the Notice of Lien is insufficient as a matter of law to establish the knowledge element of the Trustee's claim.  *See L'Amoreaux*, 755 F.3d at 751.  The Trustee failed to establish that the evidence forecloses a dispute of material fact as to whether Mr. Fitzhenry knew the Notice of Lien was fraudulent.

      B.    <u>Intent to Cause Financial Injury by Filing the Lien</u>

To prevail on summary judgment, the Trustee also had to demonstrate that Mr. Fitzhenry filed the Notice of Lien with the intent to financially harm the Debtor or the Debtor's predecessor-in-interest, Texas Mortgage.  In support of his claim, the Trustee argued: (i) that the intent element requires the filer to be aware of the harmful effects filing a lien might have on a property owner, *Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F. Supp. 2d 679, 689 (S.D. Tex. 2010); and (ii) that Mr. Fitzhenry undoubtedly knew the effect of the filing the Notice of Lien and intended to harm Texas Mortgage by filing the Notice.  (ECF No. 17 at 10).  However, the Trustee offered no evidence of Mr. Fitzhenry's knowledge of the harmful effect the Notice of Lien might have on Texas Mortgage or the Debtor.  Nor did the Trustee provide support for the allegation that Mr. Fitzhenry "no doubt . . . intended financial harm."  (ECF No. 17 at 10).  The bald assertion that

Mr. Fitzhenry's intent to cause financial harm is, essentially, "self-evident" does not justify a grant of summary judgment. *See, e.g., Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.) (refusing to reverse the grant of a "no-evidence" summary judgment motion based on a lack of evidence establishing the filer's intent to cause financial harm); *see also Celotex Corp.*, 477 U.S. at 322–23 (holding that it is the movant's burden, if the movant bears the burden at trial, to adduce evidence demonstrating it is entitled to judgment as a matter of law).

The Trustee did not establish, as a matter of law, that Mr. Fitzhenry possessed the requisite knowledge or intent to be held liable for filing a fraudulent lien.[24]  The burden never shifted to Mr. Fitzhenry to establish that the Trustee's allegations were incorrect.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.  The Trustee's Motion for Summary Judgement on the fraudulent lien claim is Denied.

## CONCLUSION

Mr. Fitzhenry's Motion to Dismiss is Denied.  The Trustee's Motion for Summary Judgment on the lien validity claim is Granted.  The Trustee's Motion for Summary Judgment on the fraudulent lien claim is Denied.  Mr. Fitzhenry's Motion for Summary Judgment is Denied. The Court will issue a separate Judgment.

SIGNED 12/11/2020

_____
Marvin Isgur
United States Bankruptcy Judge

---

[24] The Court need not reach the issue of whether Mr. Fitzhenry intended his Notice of Lien to have legal effect.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a)(2) (West 2019).